US DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

DANIEL KIM, Petitioner

    v.

MAURA HEALEY, Respondent
Governor of Massachusetts

Civil Action

Docket No. _____

## MOTION FOR DECLARATORY RELIEF PURSUANT TO 42 USC §1983

Now comes the Petitioner, Daniel Kim, in the above-named matter who humbly requests this Honorable Court grant a hearing on this matter pursuant to 42 USC §1983. As grounds for this matter the Petitioner states that the Commonwealth of Massachusetts has unlawfully deprived him of his fundamental Democratic Constitutional right to vote. The Petitioner is currently incarcerated at MCI-Shirley and has not been able to vote for the past eight years. His inability to vot is not part of his sentence and was not the result of any proceedings related to that matter and, thusly, violates his right to due process. The inability to vote stems from Article CXX amending the Massachusetts Constitution and the decision in **Richardson v. Ramirez**, 418 US 24, 94 S Ct 2655, 41 L Ed 2d 551 (1974).

The Petitioner claims that both the Article CXX Amendment and the decision in Richardson violate the First Amendment of the United States Constitution and are unConstitutional and, as such, should be overturned.

**Article CXX** says:

"**Article CXX Qualifications for Voters: incarcerated felons.** Article III of the amendments to the Constitution, as amended is hereby further amended by inserting after the word "upwards" the following words:-, excepting persons who are incarcerated in a correctional facility due to a felony conviction, and."

The Petitioner states that being deprived of his right to vote, which is a fundamental democratic constitutional right under the First Amendment was not mentioned or imposed in either of his sentences and, as such is an illegal punishment that violates his due process rights. The Petitioner would also argue that Article CXX amending the Massachusetts Constitution is unconstitutional

because it was done inreeaction to the exercise of the First Amendment right to Petition the Government for a Redress of Grievances in Mass. Prisoners Association Political Action Committee v. Acting Governor, 435 Mass 811 (1997), and done to deter-to actually forbid completely-another First Amendment right-specifically the right to votewhich arises from the freedom of expression and the freedom, both of which have long been recognized as fundamental First Amendment rights. Furthermore, the Petitioner would argue that the ta basis for Article CXX, the Supreme Court decision in Richardson, is unConstitutional because the Supreme Court did not have grounds for jurisdiction in the case and, because even if it did have jurisdiction over the matter, their decision was in error.

**ARTICLE CXX AMENDING THE MASS. CONSTITUTION WAS FORBIDDEN BYTTHE FIRST AMENDMENT TO THE US CONSTITUTION.**

The Petitioner would argue that given the timeline of events that ARTICLE CXX was a retaliatory reaction to the case in **Mass. Pris. Assoc.**, which was filed in 1997 in Buffolk Superior Court. **ARTICLE CXX** was proposed in 1998 and passed and ratified in 2000. **Mass. Pris. Assoc.** was not decided by the Supreme Judicial Court until 2001.

The decision in **NRA of Am. v. Vullo**, 602 US 175, 144 S Ct 1316, 218 L Ed 2d 642 (2024), Justice Sotomayor, speaking for a unanimous decision,wrote:

"While a governmental official can share her views freely and criticize particular beliefs in the hopes of persuading others, she may not use the pwoer of her office to punish or suppres disfavored expression.

"In **Bantam Books, Inc. v. Sullivan**, 372 US 58, 83 S Ct 631, 9 L Ed 2d 584 (1963), this court explored the distinction between permissible attempts to persuade and impermissible attempts to coerce. The Court explained that the First Amendment prohibits Government officials from relying on the 'threat of invoking legal sanctions and other means of coercion...to achieve suppression of disfavored speech. Id. at 67, 83 S Ct 631, 9 L Ed 2d 584...

"Ultimately, **Bantam Books** stands for the prinsiple that a government official cannot directly or indirectly coerce a private party topunish or suppress disv

to punish or suppress disfavored speech on her behalf. Pp. 8-11."

The Petitioner argues that the drafting, passage and ratification of Article CXX as a response to the 1997 suit in Mass. Pris. Assoc. was an unConstitutional use of Governmental Power to suppress disfavored speech-specifically the political speech of prisoners voting.

NO COMPELLING GOVERNMENTAL INTEREST EXISTS IN ARTICLE CXX.

The Petitioner would also argue that suppression of a clearly recognized fundamental democratic right must only be allowed if it is required by a legitimate governmental interest. In Shapiro v. Thompson, 394 US 618, 89 S Ct 1322, 22 L Ed 2d 600 (1968), the Supreme Court stated:

"Appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling governmental interest is unconstitutional. Cf. Skinner v. California, 316 US 535, 541 (1942); Korematsu v. United States, 323 US 214, 216 (1944); Bates v. Little Rock, 36 US 516, 524 (1960); Sherbert v. Verner, 374 US 398, 406 (1963)."

The Petitioner would point out that if you classify voting as a form of political speech, which the Court has said it is, then here, just as in United States v. Playboy Entn't Group, Inc., 529 US 803, 120 S Ct 1878, 146 L Ed 2d 865 (2000), the Government's interest is not enough to supplant a citizen's right to uncomfortable public discourse, especially given the compelling interest that incarcerated individuals have in retaining and exercising the right to vote for the simple fact that almost every aspect of their daily existence, as wards of the state, from the food they eat, the medical care they receive, where they are housed and more is the direct result of governmental actions.

In the case at the bar the Commonwealth has failed to show any compelling governmental interest in denying the right to vote to incarcerated felons, much less one that can override the compelling interest of the incarcerated to have a say in government.

## THE DECISION IN RICHARDSON WAS ERROR AND IS UNCONSTITUTIONAL.

The Petitioner would argue that the decision in <u>Richardson</u>, which is the decision on which **Article CXX** is founded, is invalid because it is unconstitutional for the following reasons:

A) The Supreme Court had no jurisdiction over the matters in **Richardson** because no actual case or controversy existed in it;

B) The Supreme Court's decision in **Richardson** was an advisory opinion and in defiance of the tradition that Federal Courts do not issue advisory opinions;

C) Even if the Supreme Court had jurisdiction, the majority opinion's interpretation of the 14th Amendment is wrong because it ignores the plain language of the 14th Amendment;

D) The historical, political and societal context of the 14th Amendment supports another interpretation that is also supported by the plain language of the 14th Amendment.

## A)   DID THE SUPREME COURT HAVE JURISDICTION OVER RICHARDSON?

The Petitioner would point out that Justice Marshall, in his dissenting opinion in **Richardson**, addressed this specific point: and said:

"The sole petitioner before this court is Viola Richardson. None of the named plaintiffs are residents of her county. While these named plaintiffs may or may not have a live controversy with the clerks in their own counties, the surely do not have one with Petitioner Richardson. While Richardson may well have a live controversy with ex-felons in her own county over the validity of the disenfranchisement laws, those ex-felons are not before this court, and she has no dispute with the named plaintiffs. **In Sum, there is no controversy between the parties before this court.**"

In Supreme Court Justice Marshall's opinion, the Supreme Court, as an Article III Court, had no jurisdiction over <u>Richardson</u>. The Petitioner would also note that the Supreme Court states, in **City of Erie v. Pap's A.M.**, 529 US 277, 120 S Ct 1382, 146 L Ed 2d 265 (2000), the following:

"In any event, the short of the matter is that we have no power
to suspend the fundamental precepts that Federal Courts 'are limited
by [the] ease-or-controversy requirement of Article III to adjud-
ication of actual disputes between adverse parties.' **Richardson v.
Ramirez**, 418 US 24, 36, 41 L Ed 2d 551, 94 S Ct 2655 (1974)."
Please note, the embedded quote is directly from the majority
opinion in **Richardson**.

Also, in **Southern Overlying Carrier Chapter v. Public Utilities
Com.** 434 US 9, 98 S Ct 251, 54 L Ed 2d 8 (1977), the Supreme Court
stated:state
"Since Article III of the Constitution limits our jurisdiction to
cases and controversies, **In Re Samer**, 361 US 253 (1960), **Castell-
ano v. Commission of Investigation**, 361 US 7 (1959), and we may
be compelled to do so even though a state court has found a just-
iciable controversy under its own law, see **Richardson v. Ramirez**,
418 US 24, 26 (1974)."
and in **Sosna v. Iowa**, 419 US 393, 95 S Ct 553, 42 L Ed 2d 532 (1
(1975), the Supreme Court said:
"While the parties may be permitted to waive nonjurisdictional
defects, they may not by stipulation invoke the judicial power of
the United States in litigation which does not present an actual
'case or controversy,' **Richardson v. Ramirez**, 418 US 24 (1974)."

The Petitioner asks shouldn't the High Court have actually
applied the holdings from the majority opinion in **Richardson**
regarding Article III to its own decision in **Richardson** itself?
**B) Was the Decision in RICHARDSON an advisory opinion?**

Again, the Petitioner would refer this Court to the dissent by
Justice Marshall in **Richardson**, which says:
"Petitioner Richardson seeks to use the named plaintiffs' contro-
versy with their own county clerks as a vehicle for this court to
issue an advisory opinion on the issue presented by the suit brought
against her by an ex-felon in her own county. Such a decision
would violate the 'oldest and most consistent thread in the Federal
law of justiciability...that Federal Courts will not give advisory
opinions.' **Flast v. Cohen**, 392 US 96 (1968)."

In **Moore v. Harper**, 600 US 1, 143 S Ct 2065, 216 L Ed 2d 729 (2023), the Supreme Court said:

"That would simply be a roundabout way of asking this Court to render an advisory opinion, but 'Federal Courts cannot give answers simply because someone asks.' **UZUEGBUNAM v. PRECZEWSKI**, 592 US at _____, 141 S Ct 792, 804, 209 L Ed 2d 94, 113 (Roberts, CJ dissenting)."

So the Petitioner would argue that the Supreme Court did not have Jurisdiction in **Richardson** because no actual case or controversy existed and the Supreme Court is not supposed to give advisory opinions. Again, this is not just the Petitioner's opinion, but two solid arguments raised by Supreme Court Justice Marshall and his two fellow dissenters on whether the Supreme Court had standing to rule on **Richardson**.

**C) Even if the Supreme Court had jurisdiction, its interpretation of the 14th Amendment was error because it ignored the plain language of the 14th Amendment.**

In the Majority opinion in **Richardson** the six justices have i interpreted the words, "in rebellion, or other crime," to mean that the framers of the 14th Amendment intended to allow disenfranchisement for felonies. However, the framers never used the words "felon" or "felony" in the wording of the Amendment. As Justice Marshall point out in Note 24 of his dissent in **Richardson** where he says:

"To say that §2 of the Fourteenth Amendment is a direct limitation on the protection afforded voting rights by §1 leads to absurds results. If one accepts the premise that §2 authorizes disenfranchisement for any crime, the challenged provision could, as the California Supreme Court has observed, require disenfranchisement for seduction under promise of marriage, or conspiracy to operate a motorvvehicle withoutta muffler, **Otsuke v. Hite**, 64 Cal 2d 596, 414 F 2d 412 (1966),..even jaywalking or traffic conviction could conceivably result in disenfranchisement, since §2 does not differentiate between felonies and misdemeanors."

The Petitioner would note that the SupremenCourt, in the years following the **Richardson** decision, stated in **Ardestani v. INS**, 502 US 129, 112 S Ct 515, 116 L Ed 2d 496 (1991), the following: "The 'strong presumption' that the plain language of the statute expresses gongressional intent is rebutted only in 'rare and exceptional circumstances,' **Rubin v. Untied States**, 449 US 424, 430, 66 L Ed 2d 653, 101 S Ct 698 (1981), when a contrary legislative intent is clearly expressed. **INS v. Cardoza-Fonseca**, 488 US 421, 432, N. 12, 94 L Ed 2d 434, 107 SCT 1207 (1987); **Consumer Products Safety Comm'n. v. GTE=Sylvania, Inc., 447 US** 102, 108, 64 L Ed 2d 766, 100 S Ct 2031 (1980). In this case, the legislative history cannot overcome the strong presumption tthat the legislative purpose is expressed by the ordinary meaning of the words use.' **American Tobacco Co. v. Patterson**, 456 US 63, 68, 71 L Ed 2d 748, 102 S Ct 1534 (1982)(quoting **Richards v. United States**, 369 US 1, 9 L Ed 2d 492, 82 X Ct 585 (1962)."

The Petitioner would suggest that in **Richardson** the history of the 14th Amendment cannot overcome the strong presumption that the intent of the framers of the 14th Amendment is expressed by the plain words, especially if one considers the historical, societal, and political context of when the 14th Amendment was drafted, passed, and ratified and the significance of the case law in **Ardestani**, **Playboy**, **City of Erie**, **Soutern Overlying Carrier Chapter**, **Sosna**, **Moore**, and **NRA of Am.**,,all Supreme Court decisions which came down after **Richardson** was decided in 1974.

**D) Does the PLAIN LANGUAGE of the 14th Amendment and the Historical, Political and Societal Context support a different Interpretation?**

The Petitioner would point out that the 14th Amendment was proposed, passed and ratified during the period of Reconstruction in the 1860s that followed the bloodiest war in United States history to date and one of the few to be fought on American soil. The Petitioner would argue that the framers of the 14th Amendment had two very important goals for the Amendment. The first purpose of the 14th Amendment was to ensure that all of the states granted the right to vote to the newly freed former slaves. It does this ex-

ceptionally well. The second goal was to protect the ten newly-formed, pro-Union state governments that had taken control of the ten former states of the Confederacy.from being sabotaged or disrupted by anyone who supported the rebellion. With thisesecond goal in mind, let us examine the plain language of the 14th Amendment.

In Section Two, <u>Representatives-Power to Reduce Apportionment</u>, it says:

"except for participation in rebellion, or other crime,"
We will come back to this shortly as it is key to the intent of the framers of the 14th Amendment and why the framers intentionally omitted the words "felon" and "felony" from the Amendment. These words are also the focus of the Majority Opinion in the flawed <u>Richardson</u> decision as you will see shortly.

In Section Three, <u>Disqualification to Hold Office</u>, it says:
"shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."
Clearly, it was the intent of the framers of the 14th Amendment to prevent people who supported the Confederacy from being eligible for any state or federal office.

In Section Four, <u>Public Debt not to Questioned-Debts of the Confederacy and Claims not to be Paid</u>, it says:
"incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave, but all such debts, obligations and claims shall be held illegal and void."
The framers of the 14th Amendment wanted to bankrupt any supporters of the Confederacy by voiding all monies owed to the rebellion supporters.

Now, given that all the crimes named in the 14th Amendment-rebellion, insurrection, and providing aid or comfort to the enemy-are clearly crimes of treason, the Petitioner would conclude that the only logical interpretation of the words:
"in rebellion, or other crime,"
from the Second section of the Amendment is:
"in rebellion, or <u>other crime of treason</u>,"
Given the goal of protecting the ten nascent pro-Union state

governments from being disrupted or sabotaged by people who had supported the Confederacy, no matter how minor their treasonous act was, it makes sense that the framers omitted the words "felon" and "felony" from the Amendment. In fact, it was necessary for the framers to omit those words, because including them would have limited the ability of the state governments to only disenfranchise those guilty of serious acts of treason, rather than all supporters of the Confederacy. The historical, societal and political context of the 14th Amendment supports this interpretation and so does the **plain language** of the Amendment, especially since the supporters of the Confederacy had committed treason and denied the legitimacy of the United States government and effectively voided the social contract that gave them their right to vote.

T  The Petitoner believes that the three dissenting Supreme Court Justices in the **Richardson** decision would also support his interpretation of the Second Section of the 14th Amendment because it, unlike the Majority's interpretation, can not lead to absurd results.

The Petitioner also believes that the framers of the 14th Amendment never intended to allow Section Two of the Amendment to be used to disenfranchise people for ordinary, mundane crimes such as robbery,.assault, kidnapping or murder, because, while these crimes may be heinous, the do not attack the legitimacy or integrity of the United States government as a sovereign nation. From the only crimes actually mentioned in the 14th Amendment, it is fairly clear to the Petitioner that the framers only intended to disenfranchise people who had committed treason, no matter how minor.

For these reasons, and because this Honorable Court may not have jurisdiction over some of the issues raised in this motion, the Petitioner would humbly ask that this Honorable Court submit this matter to the Supreme Court of the United States for review and adjudication and asks the High Court to humbly consider the changes in the case law, such as **Playboy**, **NRA of Am.**, **Ardestani**, **Moore**, **City of Erie**, **Sosna**, and **Southern Overlying Carrier Chapter**, that have come down from the Supreme Court and how they applied the decision in **Richardson** since it was decided to **Richardson** itself.

-10-

Respectfully submitted,

_____
Daniel Kim, pro se.
MCI-Shirley
P.O. Box 1218
Shirley, MA 01464

Dated: _4 Avhvst 2024_____

## CERTIFICATE OF SERVICE

__ I, Daniel Kim, hereby certify that on this date I served a true and complete copy of the foregoing Motion for Declaratory Relief Pursuant to 42 USC §1983 and Motion to Appoint Counsel upon:

Governor Maura Healey
State House
24 Beacon Street
Boston, MA 02133

Attorney General Andrea Campbell
100 Cambridge Street
Boston, MA 02114

by submitting same to a designated employee of the MCI-Shirley Prison for prompt processing and mailing by authorized prison personnel within the facility mailroom, and it shall be deemed filed as of this date per the Federal "Prison Mailbox Rule." **Houston v. Lack**, 487 US 266, 275-276 (1988).

_____
Daniel Kim, pro se